IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:05CV422-C

| | |
|---|---|
| JOHN M. CHURCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM AND RECOMMENDATION** |
| ) | |
| WACHOVIA SECURITIES, ) | |
| INC., and WACHOVIA ) | |
| CORPORATION, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on the "Defendants' Partial Motion for Dismissal of Plaintiff's Complaint" and "Memorandum ... in Support ..." (both document #2) filed October 5, 2005; and the "Plaintiff's Memorandum in Opposition ..." (document #16) filed November 28, 2005. On December 19, 2005, the Defendants filed their "Reply ..." (document #22).

This matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and the Defendants' Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the Defendants' "Motion to Dismiss" be <u>denied</u>, as discussed below.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This is an action seeking damages, that is, unpaid bonuses and severance pay, pursuant to claims for breach of contract, violation of the North Carolina Wage and Hour Act, quantum meruit, breach of supplementary contract, and "severance benefits."

The Plaintiff is a citizen and resident of Charlotte, North Carolina. Defendant Wachovia

Corporation is a North Carolina corporation headquartered in Charlotte, and the parent company of Defendant Wachovia Securities, Inc. It is undisputed that the Plaintiff was employed by the Defendants, or their predecessors in interest, First Union Corporation and First Union National Bank (collectively "Wachovia"), from sometime in April 1996 through sometime in June 2005, when he voluntarily left his employment.

Accepting the allegations of the Complaint as true, sometime in 1996, while the Plaintiff was employed by G.E. Capital, Wachovia recruited him to create, develop, and serve as managing director of their commercial mortgage backed securities servicing organization ("CMBS"). According to a letter Wachovia sent him prior to his accepting the position, Plaintiff was to receive an annual salary of $125,000 and a guaranteed incentive payment of $150,000 for 1996.

The Plaintiff also alleges that CMBS employees would be eligible for annual bonuses to be paid from a pool equal to 9% of the CMBS's net profits, as determined under the terms of Wachovia's "Capital Markets Group Bank Products Origination 1996 Incentive Plan" ("Incentive Plan"), and that he would have the sole discretion to award the bonus pool entirely to himself or to apportion the bonus pool among himself and other CMBS employees.

The Plaintiff maintains that he was very successful as managing director of the CMBS, which by February 1997 was managing $25 billion in loans, up from $1.5 billion in mid-1996.

Also in February 1997, the Capital Markets Group was reorganized, and Plaintiff became managing director of Structured Product Services ("SPS"), which included in addition to CMBS, Residential Mortgage Servicing ("RMS"), Asset Backed Servicing ("ABS"), and Special Servicing ("SS"), and began reporting to Brian Simpson, head of the Structured Product Group ("SPG"). This reorganization brought the number of employees under Plaintiff's direct supervision to approximately 90.

The Plaintiff contends that at the end of 1997, he successfully resisted Mr. Simpson's attempt to decrease the CMBS bonus pool by including in the CMBS net profit calculation some unspecified amount of losses that were not properly attributable to CMBS, and that Mr. Simpson ultimately approved a $1.1 million bonus pool for CMBS, based on the 9% formula contained in the original Incentive Plan. From that pool, the Plaintiff assigned himself a $400,000 incentive bonus, with the balance distributed among other employees at CMBS.

During 1998, Wes Jones became the Plaintiff's supervisor. The Plaintiff alleges that he discussed with Mr. Jones the Incentive Plan for 1998 and the payment of the CMBS 9% bonus, and that Mr. Jones told him that Wachovia's Compensation Committee, including Mr. Jones, Mr. Simpson and the Defendants' CEO Ken Thompson, had discussed reducing Plaintiff's bonus pool, but decided to maintain the CMBS bonus at 9% of net profit, because of both the commitments made to Plaintiff in 1996 and Wachovia's practice in prior years.

The Plaintiff maintains, however, that beginning in 1999, Wachovia calculated CMBS net profits differently, that is, in a manner that understated net profits and in such a fashion that "ma[de] it difficult [for Plaintiff] to determine the contracted for bonus pool at 9% of net income." "Complaint" at 4, Exhibit 1 to "Notice of Removal" (document #1). The Plaintiff also states that although he was repeatedly assured through 2003 by Mr. Simpson, Mr. Jones, and other senior managers that the CMBS bonus pool accurately reflected 9 % of CMBS net profits, he now believes that neither the pool nor his bonus as a portion of the pool were ever again based on the agreed 9% of CMBS net profits.[1]

Sometime prior to June 2003, Bill Green became head of the SPG, and the Plaintiff further

---

[1] In his Complaint, the Plaintiff states that until he has an opportunity to conduct discovery, he is unable to determine the amount by which CMBS profits were understated.

alleges that in June 2003, Mr. Green reorganized SPS, the Plaintiff's area of responsibility and, in the process, demoted him. After the reorganization, Plaintiff managed only Asset Backed Servicing ("ABS"), that is, his responsibilities for CMBS, Residential Mortgage Servicing ("RMS"), and Special Servicing ("SS") were taken from him.

The Plaintiff contends that Mr. Green demoted him because he had voiced a concern that Mr. Green's mismanagement of SPS was creating substantial financial risk which could lead to significant losses for Wachovia, that is, "Plaintiff's repeated protestations to Green about inadequate financial controls at SPS had earned him Green's enmity, causing Green to terminate Plaintiff's position at SPS and demote him, after Plaintiff complained to his superiors and Risk Management." Id. at 5.

The Plaintiff further alleges that when he complained to Mr. Green about the demotion, Mr. Green told him that he could resign or accept a further re-assignment and/or demotion. Plaintiff complained to Deidre Bradshaw of Wachovia's Human Resources Department and asked what his options were with regards to severance payments if he decided not to accept Mr. Green's re-assignment.

At that time, the Plaintiff was working on two very large transactions, one with GMACCM, totaling approximately $200 Billion ("Landslide"), and the other with G.E. Capital, totaling approximately $18 Billion ("Swordfish"). The Plaintiff contends that he was "uniquely qualified to acquire" Landslide and Swordfish because of his contacts at GMACCM and at G.E. Capital.

Accepting the Complaint as true, sometime later in 2003, and "[i]n order to retain [his] valuable services," Mr. Green and Ms. Bradshaw "enticed" Plaintiff "with a new job description that outlined a material and meaningful role as a managing director in Real Estate Capital Markets and as Industry Liaison for the Commercial Servicing Group, as well as Chairman of the Pricing

4

Committee" and promised him that he would "earn a substantial bonus, commensurate with bonuses payable in the Capital Markets Group for originating new business and closing large transactions. In other words, bonuses in the range of 10% of net profit." Id. at 5-6.

The Plaintiff alleges that although he closed the Swordfish transaction in August 2004, which he contends resulted in a net profit of $75 million dollars, in January 2005, Mr. Green gave him a "Below Expectations" performance evaluation and his bonus for 2004 was only $250,000, less than he had received the previous year.

In response, the Plaintiff told Mr. Green that he would request an "Enhanced Severance Package," as that term is defined in Wachovia's "Fourth Amended and Restated Wachovia Corporation Severance Plan" ("the Plan"), which, as discussed below, the undersigned has previously determined is an employee benefit plan governed by the Employment Retirement Income Security Act, 29 U.S.C. § 1001, et. seq. ("ERISA").

Although the Plaintiff was offered an enhanced severance package in an amount that is not disclosed in the record, he concluded that it was "wholly inadequate," and declined it.

Rather, sometime in June 2005, the Plaintiff quit his job, and on September 2, 2005, filed the subject Complaint in the Superior Court of Mecklenburg County, North Carolina, alleging four state law claims: breach of contract to pay an annual bonus in 1999 through 2003 based on 9% of CMBS profits, violation of the North Carolina Wage and Hour Act, quantum meruit, and breach of supplementary contract to pay an annual bonus in 2004 based on 10% of net profits in Real Estate Capital Markets, and a fifth claim for "severance benefits."

Although the Complaint does not contain the terms "ERISA" or "Plan," it repeatedly alleges that the Defendants changed "more than 50% of [Plaintiff's] job responsibilities," a quote from Section 2.9(f) of and a prerequisite for eligibility for certain benefits under the Plan. Moreover, the

5

Plaintiff alleges that the Defendants ignored their "policy dictates," and summarizes his "claim for severance benefits" as arising from the Defendants' "refus[al] [to pay] Plaintiff consistent with [their] own policies."  See "Complaint" at 11, Exhibit 1 to "Notice of Removal" (document #1).

On October 5, 2005, the Defendants removed the state court action to federal court, alleging that Plaintiff's claim for severance benefits is, in fact, a claim "relating to" ERISA and, therefore, a basis for federal question jurisdiction.   The same day, the Defendants filed a "Motion for Partial Dismissal of Plaintiff's Complaint" (document #2), that is, the Plaintiff's claims for breach of contract, violation of the North Carolina Wage and Hour Act, quantum meruit, and breach of supplementary contract, contending that Plaintiff has failed to plead sufficient facts to support these claims and that any damages otherwise recoverable under the first three claims are also limited by statutes of limitations.

This case was initially assigned to the undersigned, however, the parties did not indicate whether they consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c).

On October 18, 2005, the Plaintiff filed a "Motion to Remand" (document #5), along with a "Motion for Extension of Time for Response to Motion to Dismiss" (document #4), asking that he be permitted to delay filing a response to the Defendants' Motion for Partial Dismissal until 14 days after the Court resolved his Motion to Remand.  The next day, the undersigned granted the requested extension.  See  "Order" (document #6).

On November 10, 2005, the undersigned denied the Plaintiff's Motion to Remand.  See "Memorandum and Order" at 5 (document #9) (subject matter jurisdiction exists because Plaintiff's fifth "claim expressly seeks 'severance benefits' under the Defendants' 'policies' – an unmistakable reference to payments available, if at all, only under the terms of the Plan" and therefore relates to and is preempted by ERISA).

On November 15, 2005, the Plaintiff filed a "Refusal To Proceed Before a U.S. Magistrate

6

Judge" (document #11), and this case was reassigned to the Honorable Robert J. Conrad, Jr., and referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B).

On November 18, 2005, the Plaintiff filed a "Motion for Reconsideration" (document #13) which seeks "clear error" review by the District Court of the undersigned's denial of the Motion to Remand. The Plaintiff's appeal is pending before Judge Conrad.

On November 28, 2005, the Plaintiff filed his Response to the Defendants' Motion for Partial Dismissal, and on December 19, 2005, the Defendants filed their Reply. Accordingly, the Defendants' Motion for Partial Dismissal has been fully briefed and is, therefore, ripe for determination.

## II. DISCUSSION

### A. Standard of Review

"A motion to dismiss under [Fed. R. Civ. P. 12(b)(6)] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir.), cert. denied, 510 U.S. 828 (1993), citing 5A C. Wright & A. Miller, Fed. Practice and Procedure §1356 (1990).

"A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of [the subject] claim." McNair v. Lend Lease Trucks, Inc., 95 F.3d 325, 328 (4th Cir. 1996)(en banc), citing Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989); and Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969). Accord Republican Party of NC, 980 F.2d at 952 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle

him to relief") (internal citation omitted).

In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the nonmoving party, assuming factual allegations to be true. See, e.g., Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); Martin Marietta v. Int'l Tel. Satellite, 991 F.2d 94, 97 (4th Cir. 1992); and Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).

### B. Breach of Contract

In North Carolina, to state a valid breach of contract claim, a plaintiff must allege the existence of a contract and a material breach of its terms. See, e.g., Woolard v. Davenport, 166 N.C. App. 129, 134, 601 S.E. 2d 319, 322 (2004); and Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E. 2d 838, 843 (2000). In other words, "where a complaint alleges each of these elements, it is error to dismiss a breach of contract claim under Rule 12(b)(6)." Woolard, 166 N.C. App. at 134, 601 S.E. 2d at 322.

Moreover, as the Plaintiff points out in his brief, on facts virtually identical to those alleged here, the North Carolina Court of Appeals recently upheld a jury verdict in favor of another former Wachovia senior manager, who served as Senior Vice-President in Wachovia's Structured Products Group from 1996 through 2001, on his breach of contract claim. Arndt v. First Union National Bank, ___ N.C. App. ___, ___, 613 S.E. 2d 274, 279 (July 7, 2005) (evidence supported jury's findings that parties had an oral contract that plaintiff would receive annual bonuses equal to 20% of all net income he produced, that bank breached contract by changing method of calculating net

8

income, and that plaintiff's acceptance of reduced bonuses did not amount to waiver of the breach).[2]

As the parties agree, breach of contract claims are subject to a three-year statute of limitations. See N.C. Gen. Stat. § 1-52(1). "Ordinarily, the period of the statute of limitations begins to run when the plaintiff's right to maintain an action for the wrong alleged accrues. The cause of action accrues when the wrong is complete, even though the injured party did not then know the wrong had been committed." Davis v. Wrenn, 121 N.C.App. 156, 158-59, 464 S.E.2d 708, 710 (1995).

It is well settled, however, that a statute of limitations is not a defense to an otherwise proper cause of action where the party asserting the limitations period has made misleading representations, which the opposing party relied upon in good faith; rather, the limitation period will be tolled pursuant to the doctrine of equitable estoppel. Nowell v. Tea Co., 250 N.C. 575, 579, 108 S.E. 2d 889, 891 (1959) ("lapse of time, when properly pleaded, is a technical legal defense…[n]evertheless, equity will deny the right to assert that defense when delay has been induced by acts, representations, or conduct, the repudiation of which would amount to a breach of good faith"). Actual fraud, bad faith, or an intent to mislead or deceive are not essential to invoke the equitable doctrine of estoppel and toll the limitations period. Id. Accord Duke University v. Stainback, et al, 320 N.C. 337, 340, 357 S.E. 2d 690, 693 (1987) (doctrine of equitable estoppel applicable where defendant misled plaintiff into believing he would receive payment for services rendered once underlying case between defendant and insurance company concluded); and Watkins v. Motor Lines, 279 N.C. 132, 181 S.E. 2d 588 (1971).

---

[2]The Defendants-Appellants in Arndt were First Union National Bank, First Union Corporation, and Wachovia Corporation. The undersigned takes judicial notice that Defendants-Appellants have not filed a petition for discretionary review with the North Carolina Supreme Court and that the time for doing so has long expired. See N.C. R. RAP. App. R. 15b (petition for discretionary review must be filed within 15 days of issuance of mandate).

Applying these legal principles to the allegations in the Complaint, which must be taken as true at this early point in the proceedings, the Plaintiff has stated a claim for breach of contract and, further, has alleged facts, if true, which are sufficient to toll the statute of limitations. Indeed, the Plaintiff alleges not only that he and Wachovia agreed in 1996 that he would receive an annual bonus payable from and based upon a pool representing 9% of CMBS net profits, but also that beginning in 1999, Wachovia breached that agreement by understating CMBS net profits and using a methodology that prevented the Plaintiff from determining independently the amount of his department's actual net profits. Rather, the Plaintiff contends that he was forced to rely on Wachovia's repeated assurances that the net profit calculation was accurate and that he had no reason to suspect that net profits had been understated until sometime after he received his 2003 bonus.

In short, the Plaintiff has alleged the existence of a contract, which Wachovia materially breached, and that Wachovia lulled him into inaction by repeatedly assuring him that he had been paid all bonuses to which he was entitled. Although discovery may reveal that there was no oral agreement to tie the Plaintiff's bonus to 9% of CMBS profits, that Wachovia properly calculated net profits, or that, in any event, the Plaintiff was aware of any miscalculation at a much earlier date, these allegations taken in the light most favorable to the Plaintiff presently are sufficient to state a claim for breach of contract and to leave the statute of limitations issue for resolution at a later date. Accord Nowell, 250 N.C. at 579, 108 S.E. 2d at 891 ("equity will deny the right to assert [statute of limitations] defense when delay has been induced by acts, representations, or conduct, the repudiation of which would amount to a breach of good faith"); and Arndt, ___ N.C. App. at ___, 613 S.E. 2d at 279 (affirming jury verdict on claim of breach of oral contract). Accordingly, the undersigned will respectfully recommend that the Defendants' Motion for Partial Dismissal be denied as to the Plaintiff's breach of contract claim.

### C. North Carolina Wage and Hour Act Claim

The North Carolina Wage and Hour Act, N.C. Gen.Stat. § 95-25.1 et seq. ("NCWHA"), provides that every employer shall:

> [n]otify its employees, in writing ... of any changes in promised wages prior to the time of such changes except that wages may be retroactively increased without the prior notice required by this subsection.

N.C. Gen.Stat. § 95-25.13(3).

In Arndt, supra, in addition to affirming the jury's verdict on the plaintiff's breach of contract claim, the North Carolina Court of Appeals also held that the same facts, that is, undisclosed failure to pay an annual bonus that was to have been calculated as a specified percentage of the net profits produced by the plaintiff's department, were sufficient to support an award of liquidated damages pursuant to the NCWHA. ___ N.C. App. at ___, 613 S.E. 2d at 274 (evidence supported NCWHA claim where bank changed plaintiff's compensation without first providing notice).

Moreover, it is well settled that the two-year statute of limitations applicable to NCWHA claims does not begin to run until there has been a demand of payment and a refusal by the employer. See Hamilton v. Memorex Telex Corp., 118 N.C. App. 1, 8, 454 S.E.2d 278, 281 (1995) (two-year statute of limitations under the NCWHA did not bar a claim to recover pay that accrued over a twenty year period where plaintiff filed complaint within two years of demand and refusal of payment); and Glover v. First Union National Bank, 109 N.C. App. 451, 454, 428 S.E.2d. 206, 208 (1993).

Taking the Complaint as true, as we must, Wachovia never notified the Plaintiff that it had changed its method of calculating his bonus, the Plaintiff was otherwise unaware of Wachovia's failure to pay him the agreed upon annual bonuses until sometime in early 2004, and he did not demand payment until then. Accordingly, the Plaintiff has stated a NCWHA claim, which was

timely filed on September 2, 2005; accordingly, the undersigned will respectfully recommend that the Defendants' Motion for Partial Dismissal also be <u>denied</u> as to the Plaintiff's Wage and Hour Act claim.

### D. Quantum Meruit Claim

The Plaintiff pled his quantum meruit claim in the alternative to his breach of contract claim, that is, should the jury conclude that there was no contract for the payment of an annual bonus based on 9% of CMBS net profits, the Plaintiff contends that he should be allowed to recover the reasonable value of the services he performed for Wachovia.

"Quantum meruit is a measure of recovery for the reasonable value of services rendered in order to prevent unjust enrichment." <u>Pritchett & Burch, PLLC v. Boyd</u>, 169 N.C.App. 118, 124, 609 S.E.2d 439, 443 (2005) (where there was no express contract, quantum meruit was proper remedy for plaintiff law firm to recover expenses incurred in advancing the costs of litigation).

In support of its Motion to Dismiss the Plaintiff's quantum meruit claim, Wachovia contends that because it paid the Plaintiff a "sizable bonus" each year that he was employed, the Plaintiff cannot now contend that Wachovia has been unjustly enriched. However, as the Plaintiff points out in his brief, the question is not whether he received a "sizable" payment but whether that payment was <u>reasonable</u> – an issue reserved for the jury. <u>Accord</u> <u>Booe vs. Shadrick</u>, 322 N.C. 567, 570-71, 369 S.E. 2d 554, 556 (1988) (on quantum meruit claim, reasonableness of payment is jury question).

Moreover, for the same reasons that the three-year statute of limitations may have been tolled as to the Plaintiff's breach of contract claim, discussed in Section II. B. above, the same limitations period on the quantum meruit claim may not have begun to run until sometime after the Plaintiff received his 2003 bonus, that is, in early 2004. If so, the quantum meruit claim, like the breach of

12

contract claim, was timely filed on September 2, 2005.

The undersigned will, therefore, respectfully recommend that the Defendants' Motion for Partial Dismissal be <u>denied</u> as to the Plaintiff's quantum meruit claim as well.

### E. Claim for Breach of Supplementary Contract

As discussed above, the Plaintiff contends that Mr. Green's and Ms. Bradshaw's alleged 2003 promise – that after accepting a position as a managing director in the Real Estate Capital Markets division, he would "earn a substantial bonus ... in the range of 10% of net profit" Wachovia earned on transactions he closed – amounted to a supplementary contract of his original employment agreement.

It is well settled in North Carolina that "a bonus offered by an employer to encourage more efficient service by an employee is an enforceable supplementary contract even though the bonus may be measured by earnings or productivity rather than by a fixed sum." <u>Buchele v. Pinehurst Surgical Clinical, P.A.</u>, 80 N.C. App. 256, 261, 341 S.E. 2d 772, 775 (1986), <u>citing</u> <u>Chew v. Leonard</u>, 228 N.C. 181, 44 S.E.2d 869 (1947). <u>Accord</u> <u>Arndt</u>, ___ N.C. App. at ___, 613 S.E. 2d at 279 (evidence supported jury's findings that parties had an oral contract that plaintiff would receive annual bonuses equal to 20% of all net income he produced, that bank breached contract by changing method of calculating net income, and that plaintiff's acceptance of reduced bonuses did not amount to waiver of the breach).

It is undisputed that the Plaintiff's 2004 bonus was significantly less than 10 % of the net profits that the Plaintiff alleges he generated in his new position.

Accordingly, because the Plaintiff has alleged facts that if proven are sufficient to support a claim for breach of supplementary contract, the undersigned will respectfully recommend that the

Defendants' Motion for Partial Dismissal also be <u>denied</u> as to that claim.

## III. <u>RECOMMENDATION</u>

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the "Defendants' Partial Motion for Dismissal of Plaintiff's Complaint" (document #2) be **DENIED**.

## IV. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003); <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989); <u>United States v. Rice</u>, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to <u>de novo</u> review by the district court. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 201 (4th Cir. 1997); <u>Snyder</u>, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. <u>Diamond</u>, 416 F.3d at 316; <u>Wells</u>, 109 F.3d at 201; <u>Page</u>, 337 F.3d at 416 n.3; <u>Thomas v. Arn</u>, 474 U.S. 140, 147 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 845-46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; <u>and to the Honorable Robert J. Conrad, Jr.</u>

**SO RECOMMENDED AND ORDERED.**

**Signed: January 5, 2006**

_Carl Horn, III_

Carl Horn, III
United States Magistrate Judge